## Cincinnati, New Orleans & Texas Pacific Railway Company v. Wilson's Administrator.

(Decided December 15, 1914.)

### Appeal from McCreary Circuit Court.

1. Master and Servant—Employers' Liability Act.—The Federal Employers' Liability Act literally construed, imposes liability for the negligent acts of the employer's officers, agents and employees; but in the absence of Federal Court rulings to the contrary, it may not fairly be said that by this Act Congress undertook to abrogate the fundamental principles of common law in respect of the vicarious responsibility of the master for the negligent acts of his servants. At the time of the enactment of the statute, it was the well-established doctrine of the common law that the master is responsible for the negligent acts of his servants while acting as such, although unauthorized or even forbidden by the master, provided the same were committed in the course of the servants' employment; and the act in question should not be construed, therefore, to impose legal liability upon the master except for negligent acts of his servants committed in the course of their employment.

2. Master and Servant—Master's Liability for Servant's Acts—Course of Employment.—A work-train standing on a sidetrack awaiting the passing of another train had upon it section foremen and their crews who had been ordered aboard it for the purpose of unloading track ballast. One of the section foremen under the mistaken belief that the switch connecting this side track and the main track on which the other train was approaching had been left open, shouted to the section men to jump off, that the trains were going to collide. He, himself, jumped off and ran across the main track followed by another section foreman and some of the men, one of whom was thereby killed by the locomotive of the passing train. Held, that such act was performed within the course of his employment, imposing liability upon the master.

EDWARD COLSTON, JOHN GALVIN and TYE & SILER for appellant.

HENRY C. GILLIS, J. B. SNYDER and B. B. SNYDER for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

John Wilson was a section hand in the employment of the Cincinnati, New Orleans & Texas Pacific Railway Company at Pine Knot. The foreman of the section crew of which he was a member was Gran Ramsey.

On April 25, 1911, Ramsey and his crew were ordered to board a work-train which had been loaded at Oakdale, Tennessee, with ballast material, and which was proceeding northward to a point near to and south of Flat Rock, Kentucky, at which place the section crew was to assist in unloading the material for ballasting the tracks.

Nate Sumner, another section foreman, with his crew, and Joe Spradlin, a third section foreman, with his crew, were also aboard this work-train for the same purpose, Ramsey, however, being what might be termed the "senior" or superior foreman of the force.

After arriving at the place where the ballast material was to be unloaded and there working for a while, it became necessary to yield the right-of-way to a regular train coming from the south. The work-train for this reason proceeded north to Flat Rock, followed by the regular train mentioned.

Flat Rock is approached from the south by two main line tracks; one known as the North Main, over which trains proceed when running north, and the other known as the South Main, over which trains pass when proceeding south. At Flat Rock a passing track is connected to the South Main by a switch at both ends of the passing track; the South Main being between this passing track and the North Main. A short distance to the north of this passing track the North Main and South Main tracks merge into a single track leaving Flat Rock to the north.

This work-train came into Flat Rock over the North Main, and then backed on to the South Main in order to permit the regular train behind it to pass; but, after being transferred to the South Main, the operator of the signal tower at that point informed the conductor that an extra freight train was approaching Flat Rock from the north, which, when it reached Flat Rock, would, of course, proceed south over the South Main; and, for that reason, the work-train was required to take a position on the passing track. The work-train was then placed on this passing track; the regular train which had followed it into Flat Rock was on the North Main, thus

leaving the South Main track, between the passing track and the North Main, clear for the passage of the extra freight train from the north. A few minutes thereafter this extra freight came into Flat Rock.

During the time the work-train had been at Flat Rock the section men had remained on the train, and they were thereon when the extra freight train approached. Nate Sumner and a part of his crew and Gran Ramsey and part of his crew, were sitting on a car of the ballast material just behind the locomotive of the work-train.

Just as the extra freight train was discovered to be approaching, Nate Sumner, laboring under the mistaken impression that the operator in the signal tower had neglected to close the switch connecting the South Main with the passing track, after letting the work-train in on the passing track, and believing that the extra freight train, which was approaching at a speed of forty or more miles per hour, would be thrown upon the passing track and crash into the work-train, shouted the warning: "Fall off—it is going to hit us!" He himself jumped off the car and ran across the South Main track. Gran Ramsey, the senior foreman, followed his example, as did others of the section crews. John Wilson likewise jumped off of the work-train, but in attempting to cross the South Main was struck by the locomotive of the extra freight train and killed.

This action was instituted in the McCreary Circuit Court by the administrator of Wilson's estate under the Federal Employers' Liability Act to recover damages for his death. There was a verdict and judgment for six thousand dollars, four thousand dollars for the use and benefit of his widow and two thousand dollars for the use and benefit of an infant child. The railway company appeals.

1. The facts in the case are undisputed, and the appeal really presents but a single question of law.

That Nate Sumner was guilty of negligence cannot be seriously denied. The only question is whether the railway company is answerable for his negligence. Appellant disclaims such responsibility, insisting that the act of Sumner in shouting to the men on the cars and jumping off himself was one not performed within the course of his employment.

Construing the Federal Employers' Liability Act literally, it imposes liability upon the employer for the

negligent acts of its officers, agents or employes. But appellant contends that it is only for such acts as are performed by its officers, agents and employes within the course of their employment, that the statute imposes liability; and this involves and requires an interpretation of the act.

That the avowed and principal purpose of the enactment of this legislation was to abolish the fellow-servant doctrine in certain cases, has many times been written and is here conceded. But, in the absence of ruling of the Federal Courts to the contrary, we do not believe that it may fairly be said that by this act Congress undertook to abrogate the fundamental principles of the common law in respect of the vicarious responsibility of the master for the negligent acts of his servants.

Statutes are to be construed with reference to the principles of the common law in force at the time of their enactment; and are not to be understood as affecting any change therein beyond that which is expressed, or which follows by necessary implication therefrom. 36 Cyc., 1145.

At the time of the enactment of the statute in question it was the well-established doctrine of the common law that the master is responsible for the negligent acts of his servants while acting as such servants, if committed in the course of their employment, although unauthorized or even forbidden by the master, and without regard to their motives. Shearman & Redfield on Negligence, 6th Ed., Sec. 146; 26 Cyc., 1529; 27 L. R. A., 161, note; Philadelphia & R. Co. v. Derby, 14 How. (U. S.), 468, 14 L. Ed., 502; and see the following Kentucky cases: Winnegar's Admr. v. Cent. Pass. R., 85 Ky., 552; Williams' Admr. v. Southern Railway, 73 S. W., 779, 24 R., 2214; Sullivan v. L. & N., 115 Ky., 447, 74 S. W., 171, 24 R., 2344; L. & N. v. Routt, 76 S. W., 513, 25 R., 887; Patterson v. M. & B. S. R. Co., 78 S. W., 870, 25 R., 1750; Mace v. A. C. & I. Ry., 118 Ky., 885, 82 S. W., 612, 26 R., 865; South Cov. Ry. v. Cleveland, 30 R., 1072, 100 S. W., 283, 11 L. R. A. (N. S.), 583; Davis' Admr. v. Ohio Valley Banking & Trust Co., 127 Ky., 800, 32 R., 627, 106 S. W., 843, 15 L. R. A. (N. S.), 402; Robards v. Bannon Sewer Pipe Company, 130 Ky., 380, 133 S. W., 429, 132 A. S. R., 394, 18 L. R. A. (N. S.), 923; C. N. O. & T. P. Ry. v. Rue, 142 Ky., 699, 134 S. W., 1144, 34 L. R. A. (N. S.), 200; Ches. & Ohio Ry. v. Ford, 158 Ky., 800.

It is true that this phase of the rule of *respondeat superior* has, generally speaking, been applied only when the servant's neglect operated upon third persons, i. e., persons other than servants of the common master; but this has resulted, we apprehend, because the fellow-servant doctrine is really a limitation upon the rule of *respondeat superior*. So that in those cases where a servant of the common master was injured by another servant's negligence, it was immaterial whether the negligent act was committed in the course of the servant's employment, because, under the fellow-servant doctrine, the master was not answerable therefor.

Our attention has been directed to but one case in which this particular phase of the rule of *respondeat superior* has been invoked and applied in an action by a servant to recover from his master for injuries caused by the neglect of another servant of the common master. Sullivan v. L. & N., *supra*. In that case, had the negligent act complained of been performed within the course of the servant's employment, a recovery could have been had, although the negligent servant and the injured servant were employed by a common master, for the reason that the negligent servant was a ''superior servant'' for whose negligence, if gross, under a doctrine peculiar to Kentucky, the master would have been liable.

However, notwithstanding the dearth of authority upon the precise point, we have had no hesitancy in reaching the conclusion that where legal liability is sought to be imposed upon a master for the negligent act of his servant, the act must have been performed within the course of the servant's employment, whether it operated upon third persons, i. e., strangers, or caused the injury of a servant of the common master under conditions of fact or law rendering the fellow-servant doctrine inapplicable or inoperative to deny recovery.

The whole doctrine of the vicarious responsibility of the master for the neglect of his servants inevitably rests upon this requirement, for, unless the negligent act be one performed within the course of the servant's employment, it is not fairly imputable to the master as his own, and the maxim, *Qui facit per alium, facit per se* —He who acts through another, acts himself—is not applicable.

These were fundamental and well-settled principles of common law at the time of the enactment of the Fed-

eral Employers' Liability Act; and, in the absence of specific provisions to the contrary, that act should be interpreted so as to embrace these principles, and should not be construed as imposing liability upon the master for the neglect of his servants unless their negligent acts were performed within the course of their employment.

2. It being settled, then, that the liability imposed under the act in question covers only such negligent acts as are committed in the course of the servant's employment, the question is presented whether the act of Nate Sumner in calling to the men on the work-train to jump off, and in jumping off himself and running across the South Main, was committed within the course of his employment. Was it really the act of a servant as a servant; or did he step aside from the course of his employment to pursue and effect some purpose of his own?

Many text-writers and many courts have considered this question of what constitutes "course of employment." None have attempted to lay down any hard and fast rule defining it; nor are we disposed to undertake that which others have declined. It has been said that an act cannot be considered as within the course of the servant's employment merely because the servant performed it with intent to benefit or further the interests of his master; but this is not universally true, although strong evidence thereof.

In this case Nate Sumner was a section foreman there in charge of his crew. True, Ramsey was the senior or superior foreman in charge of the work, and Wilson was one of Ramsey's men; but Sumner was, nevertheless, a foreman, and section hands had a right to believe that there was imposed upon him, by virtue of his position, at least a secondary responsibility—a greater responsibility than a mere section hand—for their safety and some measure of duty in their behalf. He was discharging that obligation when he shouted. Had he been acting for Nate Sumner alone, he would have jumped and ran, but remained silent; but, in his mistaken belief as to the position of peril in which the section hands on the work-train were placed, he undertook to do that which every master expects those servants to do whom he places in authority over other servants, that is, to prevent injury to all persons, be they servants of the master or strangers.

His act was such an act as a personal master there present and laboring under the same mistaken belief as

Nate Sumner would have performed. And, because of that quality, his act was fairly imputable to the master, imposing legal liability therefor.

3. In view of what has been said, it will be seen that the trial court would properly have directed a verdict for the plaintiff. The ruling of the trial court upon the defendant's motion for a continuance was, therefore, not prejudicial, for the evidence sought to be made available would not have constituted a defense.

Nor are the criticisms of the instructions which appellant advances, material to be considered.

The judgment is affirmed.