EL PASO & SOUTHWESTERN COMPANY V. ANGELA LA LONDE.

Application No. 9292.  Motion No. 3627.  Opinion delivered April 5, 1916.

**Death—Action—Injuries in Another State—Laws of New Mexico.**

   The result reached by the Court of Civil Appeals (El Paso & S. W. Co. v. La Londe, 173 S. W., 890) in affirming a recovery by the widow and temporary administratrix in a suit in Texas on a right of action for death created by the Constitution and laws of New Mexico, where the injuries and death occurred, is approved, *per curiam,* by refusal of a writ of error.  Mr. Justice Hawkins, in an opinion concurring in overruling applicant's motion for rehearing, examines the laws of New Mexico and gives the reason on which his concurrence is based.  ·(Pp. 68-77.)

Motion for rehearing on an application for writ of error previously refused.

Angela La Londe, as widow and temporary executrix of deceased, sued the El Paso & Southwestern Company in the District Court of El Paso

County, Texas, for injuries resulting from death by defendant's negligence in New Mexico. Defendant appealed from a judgment of recovery in plaintiff's favor, which was affirmed (El Paso & S. W. Co. v. La Londe, 173 S. W., 890). Application for writ of error by appellant was refused, *per curiam,* without written opinion, on February 23, 1916. On April 5, 1916, a motion for rehearing was overruled, *per curiam,* an individual concurring opinion being filed by Mr. Justice Hawkins.

*Hawkins & Franklin* and *W. M. Peticolas,* for applicant.

*Wallace & Gardiner,* for appellee.

MR. JUSTICE HAWKINS concurring in overruling applicant's motion for a rehearing on his petition for writ of error, delivered the following opinion:

The course of reasoning by which my conclusions herein have been reached is, in several respects, so different from that shown by the opinion of the Court of Civil Appeals in this cause that I feel duty bound to state my individual views herein, although, with some exceptions, the rule in this court has been not to write in granting or in refusing applications for writs of error.

This action for damages for the killing of La Londe, on April 21, 1912, in New Mexico, by one of plaintiff in error's trains, was instituted in a Texas court by his widow as temporary administratrix and personal representative of the estate of the decedent.

Trial before a jury resulted in verdict and judgment in her favor for $13,750, which judgment was affirmed by our Court of Civil Appeals for the Eighth Supreme Judicial District. 173 S. W., 890. The railway company applied for a writ of error, which this court refused, and now prays for a rehearing.

It is contended by the railway company that the suit can not be maintained by the Texas temporary administratrix in the absence of allegation and proof of orders of the probate court extending the period of administration. Under such circumstances such orders will be presumed. Williams v. Bank, 91 Texas, 651, 45 S. W., 690. Moreover, the record does not show that the right of the plaintiff to sue in that capacity was challenged by a sworn plea, as provided by Revised Statutes, 1911, article 1906, subdivision 2.

Complaint is made by the railway company of the refusal of the trial court to submit to the jury the provisions of the Constitution and statutes of New Mexico which were admitted in evidence before the court to enable the court to determine whether they or any of them govern or affect the rights of the parties, and to instruct the jury accordingly. In that refusal there was no error. Andrews v. Hoxie, 5 Texas, 171; Willard v. Conduit, 10 Texas, 213.

The temporary administratrix relies upon the Act of February 21, 1891, the Act of February 17, 1893, and section 16 of article XX of the Constitution of New Mexico, in turn, while the railway company

relies upon article 3213 of the Compilation of 1897, and section 4 of article XXII of said Constitution, all as shown below.

Their history, as I glean it. is as follows:

The original Act of 1882 dealt, in section 1, with damages for injuries resulting in death when caused by the wrongful acts of common carriers, their agents, servants and employees, while engaged in operating locomotives, trains, stage coaches and other public conveyances, and, in sections 2 and 3, with damages for such injuries when caused by wrongful acts of corporations and persons other than common carriers.

Said section 1 reads thus:

"Whenever any person shall die from any injury resulting from, or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car, or train of cars, or of any driver of any stage coach, or other public conveyance, while in the charge of the same as driver; and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad, or any part thereof, or in any locomotive or car, or in any stage coach, or other public conveyance, the corporation, individual or individuals, in whose employ any such officer, agent, servant, employee, engineer or driver, shall be at the time such injury was committed, or who owns any such railroad, locomotive, car, stage coach, or other public conveyance, at the time any injury is received, resulting from, or occasioned by any defect or insufficiency above declared, shall forfeit and pay for every person or passenger so dying, the sum of five thousand ($5000) dollars, which may be sued and recovered: First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or if he or she fails to sue within six months after such death, then by the minor child or children of the deceased; or, third, if such deceased be a minor and unmarried, then by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment; or, if either of them be dead, then by the survivor. In suits instituted under this section, it shall be competent for the defendant for his defense to show that the defect or insufficiency named in this section, was not of a negligent defect or insufficiency."

Said section 1 was carried into the Compilation of 1884 as article 2308, and into the Compilation of 1897 as article 3213, and appears to be still in force unless and except as repealed, amended or rendered inoperative by said Act of 1891, said Act of 1893 and said section 16 of article XX of the Constitution.

If article 3213 is applicable in this case its unquestionable effects are (a) arbitrarily to fix, at $5000, the amount of the recovery, such fixed amount being in the nature of a penalty rather than in the nature of compensatory damages; and (b) to deny to defendant in error the right to maintain the suit in the capacity in which she sues herein.

Said sections 2 and 3 of said Act of 1882 became sections 2309 and 2310 of the Compilation of 1884, and were amended by "An Act to amend sections 2309 and 2310 of the Compiled Laws of New Mexico

of 1884"; approved February 21, 1891. Said Act of 1891 authorizes, in general terms, recovery of damages for injuries resulting in death; it fixes no limit on the amount to be recovered; it requires that actions thereunder be in the names of personal representatives of the decedent; but that amendment, it seems, does not relate to common carriers, and does not repeal said article 3213. Romero v. Railroad, 11 N. Mex., 684, 72 Pac., 38, in which case the Supreme Court of the Territory of New Mexico held said article 3213 applicable, although the injuries of the decedent, who was not an employee, were inflicted in June, 1902.

Said Act of February 17, 1893, "An Act for the protection and relief of railroad employees and for other purposes," provides:

"Every corporation operating a railway in this Territory shall be liable in a sum sufficient to compensate such employee for all damages sustained by any employee of such corporation, the person injured or damaged being without fault on his or her part, occurring or sustained in consequence of any mismanagement, carelessness, neglect, default or wrongful act of any agent or employee of such corporation, while in the exercise of their several duties, when such mismanagement, carelessness, neglect, default or wrongful act of such employee or agent could have been avoided by such corporation through the exercise of reasonable care or diligence in the selection of competent employees, or agents, or by not overworking said employees or requiring or allowing them to work an unusual or unreasonable number of hours," etc.

It also provides:

"Whenever the death of an employee shall be caused under circumstances from which a cause of action would have accrued under the provisions of the two preceding sections, if death had not ensued an action therefor shall be brought in the manner provided by section 2310 of the Compiled Laws of New Mexico, as amended by chapter XLIX of the Session Laws of 1891 of New Mexico, and any sum recovered therein shall be subject to all the provisions of said section 2310 as so amended."

While said Act of 1893 relates to common carriers, its operation is restricted to certain designated classes of cases, involving either want of care in the selection of employees or agents or overworking them. Neither the pleading nor the evidence brings this case within its purview; consequently, at least for the purposes of this case, it neither controls nor affects said article 3213.

Said section 4 of article XXII of the Constitution is as follows:

"All laws of the Territory of New Mexico in force at the time of its admission into the Union as a State, not inconsistent with this Constitution, shall be and remain in force as the laws of the State until they expire by their own limitation, or are altered or repealed, and all rights, actions, claims, contracts, liabilities and obligations shall continue and remain unaffected by the change in the form of government."

Section 16 of article XX of the Constitution, adopted in 1911, provides:

"Every person, receiver or corporation owning or operating a railroad within this State shall be liable in damages for injury to, or death of, any person in its employ, resulting from the negligence in whole or in part of said owner or operator or of any of its officers, agents or employees thereof, or by reason of any defect or insufficiency, due to its negligence, in whole or in part, in its cars, engines, appliances, machinery, track, roadbed works, or other equipment.

"An Action for negligently causing the death of an employee as above provided shall be maintained by the executor or administrator for the benefit of the employee's surviving widow or husband and children; or if none, then his parents; or if none, then the next of kin dependent upon said deceased. The amount recovered may be distributed as provided by law. Any contract or agreement made in advance of such injury with any employee waiving or limiting any right to recover such damages shall be void."

It seems that no statute has been enacted to put section 16 into effect, but its provisions, other than those relating to distribution of the amount to be recovered in death cases, appear to be self-operative, authorizing, whenever applicable, recovery of compensatory damages in any reasonable amount, actions in death cases thereunder to be by personal representatives of the decedent in behalf of the designated beneficiaries.

However, the expression "shall be liable in damages for injury to, or death of, any person in its employ," etc., greatly narrows the field of liability and was intended, I think, to restrict its legal effect to instances in which the injuries are received by such employee *in the course of his employment in the railroad service.* If it be assumed, for the sake of the argument, or if, upon due consideration of the history and legal effect of said article 3213, it should be held that said article was ever applicable to and controlled cases wherein the material facts were essentially like those of the case at bar, and if my foregoing views as to the self-operative effect of said section 16 are correct, then, inasmuch as section 16 is later than article 3213, it follows, logically, that if at the moment when La Londe received his injuries he was *in the employ* of the railway company within the meaning of section 16, its provisions, aside from those relating to distribution, are applicable, and either section 16 or the Federal Employers' Liability Act controls this case, and this court did not err in refusing the writ of error; but if La Londe was not then so "in its employ" it is just as clear that neither said section 16 nor said Act of Congress has any application to the case at bar, and in that event article 3213 should control this appeal, the judgment was for an amount in excess of that fixed by law, and the pending motion and also the application for a writ of error should be granted, unless this court should hold that the courts of this State will not enforce the provisions of article 3213 because they are of a penal rather than of a merely compensatory nature, or because they are essentially different from the provisions of our laws

which would be applicable had La Londe's injuries been inflicted in Texas.

The charge given to the jury was, practically, to the effect that if at the moment of his injuries La Londe was "waiting to be called" he was *in the employ* of the railway company within the meaning of said section 16, which was thus made to control this case, and that view was upheld by the Court of Civil Appeals, and has prevailed in this court. But is section 16 applicable? I think not, as La Londe's injuries were not received in the course of his employment, and were not fairly related to that employment. Whether he was or was not then so "in its employ," becomes, in reality, in this case, purely a question of law, in view of the evidence bearing thereon, because in that evidence there is no conflict whatever. It was to this effect:

La Londe had been employed as a locomotive engineer, by the railway company. He was paid on a mileage basis, and drew his pay monthly. That contract had not been terminated; but, at the time of his injuries, he was not engaged in the operation of a locomotive, and was not actively in the performance of any duty to his employer. He was "off duty," but was "subject to call." He had come in at five or six o'clock in the previous evening from his run of that day, his lawful hours of rest had expired, and he was "waiting to be called" whenever he might be needed to take out some train. While so waiting, and shortly after noon, which was about an hour and a half before the usual time for him to take a train out, he left his home and went to the postoffice and thence to the railroad yard to see a friend who was engineer on an out-going train, to whom he desired to hand money. to pay off a note in another town. As his friend walked around his engine La Londe walked and chatted with him, and, while so occupied, stepped back in front of an incoming train, which struck him, inflicting injuries from which he died. La Londe was there as a mere loiterer or bystander, and there is no evidence which even suggests that he was in the yards for any purpose which was in anywise related to the call for which he was waiting, or to any duty which he owed to the company by virtue of his said employment.

Under such circumstances, and in the absence of any decision of the courts of New Mexico construing said section 16, I can not believe that La Londe was at that moment *in the employ* of the railway company within the meaning of said provision of the Constitution of New Mexico. The clause "injury to, or death of, any person in its employ" seems to me to have been intended to restrict the operation of section 16 to cases in which the injured party is not merely on the payrolls of the company and engaged from time to time, during the general period of his employment, in some service for his employer, but in which, in addition, the injuries in question are related, directly, fairly and reasonably, to such employment and service. Under any other theory of construction the provisions of section 16 become purely arbitrary. In this very case, as a matter of either natural justice or public policy, how can it be said that the railway company owed to La Londe, in that

moment, and under those circumstances, any higher duty, or that its liability for injuries negligently inflicted upon him should be more certain than if he were any other bystander who was in no sense in its employ? That it was not the purpose of section 16 to impose such higher duty or more certain liability seems plain enough when it is considered by itself alone, and it is doubly plain, it seems to me, when section 16 is considered in the light of said previous legislation of New Mexico and the meaning generally attributed by the courts to its phraseology.

In support of my views as to the legal effect of the words "in its employ," as used in section 16, and without undertaking a thorough discussion of the subject, I emphasize the uncontroverted fact that, although La Londe was "subject to call," no duty to the railway company called or detained him upon its yards, or justified his presence there at the moment of his injuries, and, in that connection, cite: East Line & R. R. Ry. Co. v. Scott, 71 Texas, 703, 10 S. W., 298, 10 Am. St. Rep., 804; St. Louis A. & T. Ry. Co. v. Welch, 72 Texas, 298, 2 L. R. A., 839, 10 S. W., 529; International & G. N. Ry. Co. v. Ryan, 82 Texas, 565, 18 S. W., 219; Texarkana & Ft. S. Ry. Co. v. Anderson, 102 Texas, 402, 118 S. W., 127; Freeman v. San Antonio Brewing Co., 38 Texas Civ. App., 396, 85 S. W., 1165 (writ of error refused); Missouri, K. & T. Ry. Co. v. Hendricks, 49 Texas Civ. App., 314, 108 S. W., 745 (writ of error refused). See, also, Doyle v. Fitchburg R. Co., 25 L. R. A., 157, 162 Mass., 66, 37 N. E., 770; McNulty v. Pennsylvania R. Co., 182 Pa., 479, 38 L. R. A., 376, 61 Am. St., 721, 38 Atl., 524.

In Railway v. Scott, this court, through Stayton, C. J., said:

"It is true that the employer is only liable as master to the servant when the latter is actually in his service, and that at times, during the period of an engagement, the employee may sustain to the employer no other relation than that of stranger.

"It does not follow from this, however, that the employee is to be deemed in the employer's service only when he is actually engaged in labor.

"He is to be deemed in the master's service whenever present to perform his duty under the contract creating the relation of master and servant and subject to orders, although at a given moment he may not be engaged in the actual performance of any labor.

"We are of the opinion that the evidence shows a state of facts which require the appellee, as the servant of appellant, to be with the train at the time he was injured. The fact that he may not have been actually engaged in the performance of labor at the time he was injured, if he was with the train in discharge of a duty the engineer had power to impose upon him by virtue of his employment, and subject to further orders, would not for the time destroy the relation of master and servant, and make him a stranger to appellant."

In Railway v. Welch, and also in Railway v. Ryan, the decision rested upon two facts: (a) the injured employee was asleep in a car

belonging to the company, provided by it for that purpose, upon its sidetrack, and (b) he was liable at any moment to be called out on duty with his gang. In neither of those cases does the conclusion or finding that the injured man was a fellow servant (or employee) at the time of the injuries, rest, as in this case, solely upon the fact that he was then "subject to call." The reasoning which controlled all the cited cases supports my views herein as to the meaning of section 16.

Under the Act of Congress known as the Employers' Liability Act of 1908, relating to interstate commerce, the liability thereby created is expressly limited to "damages to any person suffering injury while he is employed by such carrier in such commerce." In chapter V of his work on "Liability of Railroads to Interstate Employees," Mr. Doherty says:

"The title of the Employers' Liability Act is 'An Act relating to the liability of common carriers, or railroads, to their employees in certain cases.' From this title, as well as from the context of the Act, it is apparent that the remedy provided is one which arises only when the employee is killed or injured from a cause which is incidental to or arising out of railroad employment. If any injury arises from a cause in no manner connected with or arising out of such employment, no recovery is possible under the Act," citing Armitage v. Railway Co., 4 Minton-Senhouse, Workmen's Compensation Cases, 5; O'Brien v. Star Line Limited, 1 Butterworth's Workmen's Compensation Cases, 177; Jackson v. Railway Co., 178 Fed., 432, 102 C. C. A., 159, which cites numerous cases.

The rule, as enunciated in the O'Brien Case, is to the effect that there must be "some causal relation between the employment and the accident." And the same author, in the same chapter, also says:

"Not every employee who is engaged in work auxiliary to interstate commerce is included in the Act. The work of the employee, to bring him within the terms of the Act, must be directly connected with and in aid of the traffic itself, or in maintenance of instrumentalities which are generally used in such interstate traffic," citing Milner v. Railway Co., 2 Minton-Senhouse Workmen's Compensation Cases, 51; Railway Co. v. Commissioners, 6 Q. B. D., 586, and Railway Co. v. Tucker, 35 App. D. C., 123, which discusses Packett Co. v. McCue, 17 Wall., 508; Ewald v. Railway Co., 70 Wis., 420; Boldt v. Railway Co., 18 N. Y., 432, and Fletcher v. Railway Co., 168 U. S., 135, 18 Sup. Ct. Rep., 35.

In Railway Co. v. Tucker, the court said:

"The better rule, the one founded in reason and supported by authority, is that the relation of master and servant, in so far as the obligation of the master to protect his servant is concerned, arises when the servant in pursuance of his contract with the master is rightfully and necessarily upon the premises of the master. The servant in such a situation is not a mere trespasser, nor a mere licensee. He is there because of his employment."

The rule under that statute is stated thus by Roberts in section 14 of his recent treatise on "Injuries to Interstate Employees on Railroads":

"The carrier is not liable for every act of negligence causing injury to one employee by another. The negligent act causing injury or death must have been committed while the employee at fault was in the prosecution of the carrier's business. When the negligent act which causes an injury to or the death of an employee had no relation whatever to the employment the carrier is not liable, for the employee at fault must have been, when committing the act, within the scope of his employment," citing Hobbs v. Railway Co., 80 Wash., 678, 6 N. C. C. A., 84n, 90n, 142 Pac., 20; Rief v. Railway Co., 126 Minn., 430, 148 N. W., 309; Railway Co. v. West, 38 Okla., 581, 134 Pac., 655; Railway Co. v. Wilson, 161 Ky., 640, 171 S. W., 430; Reeve v. Railway Co., 82 Wash., 268, 144 Pac., 63; Martin v. Railway Co., 93 Kan., 681, 145 Pac., 849; Moyse v. Railway Co., 41 Mont., 272, 108 Pac., 1062. "And if an employee is injured or killed at a time and place and from a cause disconnected with his employment for the carrier, the carrier is not liable, for the statute requires the servant injured to have been at the time employed in interstate commerce"; citing Padgett v. Railway Co. (S. C.), 83 S. E., 283; Sanders v. Railway Co. (S. C.), 6 N. C. C. A., 200n, 81 S. E., 283; Ewald v. Railway Co., 70 Wis., 420, 36 N. W., 12, 5 Am. St. Rep., 178; Hurst v. Railway Co., 49 Iowa, 76; Dickinson v. Railway Co., 177 Mass., 365, 52 L. R. A., 110, 83 Am. St., 284, 59 N. E., 60.

That author's discussion of Hobbs v. Railway Co. embraces the following:

"Decedent was killed while riding upon the pilot of an engine. He was a hostler's helper and his last work was placing sand in the engine. In doing this work the deceased was not required to ride on a pilot. No one knew why he stepped upon the pilot. The engine in moving collided with the footboard of another switch engine, which was not visible because of escaping steam, and this caused decedent's death. There was a rule of the railroad company forbidding employees to ride on engine pilots and the decedent in addition had been specifically told not to ride on pilots. The court in denying that the railroad company was liable, said: 'The rule of liability against a railway company engaged in interstate commerce is predicated upon the duty of the company to furnish its servant a reasonably safe place in which to perform the work it requires of him, or while he has to be in those places which are incident to his work, and this duty is incident to all places where the employee must necessarily be in connection with his employment. But that duty is not incident to his place where a servant is not required to be nor expected to be in the performance of his work. Nor does it cover the servant when he is not within the scope of his employment or doing some act which is not incidental to his employment. This rule is sustained by all authorities and the Federal Act in nowise attempts to change it. Unless the evidence in this case shows that the deceased was upon the pilot of his engine in discharge of some duty required by the railroad company, then the railroad company owed him no duty except to avoid injuring him after it discovered his perilous

position.   Such is so clearly the law that it will not be doubted, and no authorities need be cited to sustain it.' ''

If, at the moment in which his injuries were inflicted, La Londe was "in the employ" of the railway company within contemplation of section 16, he was then, it would seem, undeniably, engaged in interstate commerce, the uncontradicted evidence being to the effect that any train which he might be called to take out would be an interstate train, just as were all that he had taken out in the course of his said employment, and, therefore, in that event he was, at that moment, within the provisions of said Employers' Liability Act of 1908.   But to hold that he was then so engaged in interstate commerce would be to extend the operation of that Federal statute to individuals under circumstances far beyond the broad extent in which it has been construed and applied by the Supreme Court and by Circuit Courts of the United States. Pederson v. Railway Co., 229 U. S., 146, 33 Sup. Ct., 648, 57 L. Ed., 1125, and cases cited.   See, also, the Employers' Liability Cases, 207 U. S., 497, 52 L. Ed., 297.   To that I can not agree.

The only logical escape from the conclusion that said Act of Congress, alone (236 U. S., 439), controls this case lies in holding that, under the undisputed facts, and within the meaning of said Federal statute, La Londe was not injured "while  .   .   .   employed" by, or while "in the employ" of, the railway company.

The analogy between our own fellow servants statute and said Employers' Liability Act, on the one hand, and said section 16, on the other hand, is obvious.   The argument by analogy might, with profit, be extended to embrace other statutes, did time and space permit.

To me it seems clear that neither said Act of Congress nor said section 16 should be construed so broadly as to bring the case at bar within its legal effect.

Then, if that be the correct view, is this case governed by article 3213 ?

That statute was adopted, it seems, to preserve certain causes of action after the death of the party entitled thereto in the first instance, and not to abrogate the common law rule that the servant assumes all ordinary risks of the service in which he is engaged, including risks arising from negligence of other servants of the same master in the same employment.   Accordingly, it has been held that the words, "any person," as used in article 3213, do not include servants of the same master injured through negligence of a fellow servant while acting in the common employment.   To that effect is Atchison, T. & S. F. Ry. Co. v. Farrow, 6 Colo., 498, which reviews the Missouri decisions construing a similar statute of that State, from which, it appears, the Colorado statute, in the same words as said article 3213, was taken.   Proctor v. Hannibal & St. J. R. Co., 64 Mo., 112.   See, also, Dale v. Railway Co., 57 Kan., 601, 47 Pac., 521.

Consequently, it appears that even if this case should proceed upon the theory that La Londe was a fellow servant of the engineer of the train which inflicted the injuries in question, article 3213 would not be applicable, anywhere, even though said section 16 should be held to

be not self-executing. Said New Mexico statute not being operative, *proprio vigore,* in this State, there exists no principle of comity which requires or authorizes, here, an interpretation or application thereof which would render liability thereunder more extensive in this jurisdiction than in the courts of New Mexico.

However, if La Londe was not such fellow servant, article 3213 would, it seems, have been applicable to the facts had this suit been in New Mexico.

But, even if article 3213 should be held to be applicable to cases like this in New Mexico courts, its provisions are not applicable and should not be enforced in the courts of Texas, because:

(a) Its provisions are so essentially different from those of our own laws on the subject, the former being, it seems, strictly penal, while the latter are compensatory, the amount of liability, if any, under article 3213 being in a fixed amount, but not so under our laws. Vernon's Sayles' Texas Civil Statutes, arts. 4694 et seq.; Railway Co. v. McCormick, 71 Texas, 660, 9 S. W., 540; Dale v. Railway Co., 57 Kan., 601, 47 Pac., 521, in which said article 3213 was considered.

(b) Said article 3213 is a penal statute. Railway Co. v. McCormick, *supra*; Dale v. Railway Co., *supra*; Bank v. Price, 33 Md., 487, 3 Am. Rep., 204; Derrickson v. Smith, 3 Dutch. (27 N. J. L.), 166; Halsey v. McLean, 12 Allen (Mass.), 438; Ogden v. Folliot, 3 Term R., 733; Scoville v. Canfield, 14 Johns., 338; State v. John, 5 Ham., O., 217; Lindsay v. Hill, 66 Me., 212, 22 Am. Rep., 564; Story's Conf. of Laws, secs. 620-1.

Upon the whole, each of said New Mexico statutes and section 16 of article XX of the Constitution of that State being thus, in turn, eliminated from consideration, and no other provision of the Constitution or statutes of that State having been pleaded, the laws of Texas should control this transitory action; and, no reversible error thereunder being shown, I concur in the order of this court overruling the motion of plaintiff in error for a rehearing. I regret that press of other work has prevented me from giving this case more careful consideration and briefer and more satisfactory treatment.

*Writ of error refused.*