Argued January 23; affirmed February 18, 1936.

# HANTKE *v.* HARRIS ICE MACHINE WORKS ET AL.

(54 P. (2d) 293)

*Robert T. Mautz,* of Portland (R. E. Dennison and Wilbur, Beckett, Howell & Oppenheimer, all of Portland, on the brief), for appellant.

*Clarence Phillips,* of Portland (Griffith, Peck & Coke and Charles R. Spackman, all of Portland, on the brief), for respondents.

KELLY, J. On the morning of October 5, 1933, shortly before 8 o'clock, plaintiff was riding a motorcycle easterly on North Ainsworth street, Portland. The defendant, Freytag, was driving his automobile southerly on North Delaware avenue and in the intersection of these two streets the two vehicles collided injuring plaintiff. Plaintiff contends that defendant, Harris Ice Machine Works, is liable for the negligence of defendant, Freytag, under the doctrine of *respondeat superior.*

Freytag was taking his daughter and two other young ladies to the Jefferson high school intending

thereafter to go to the place of business of defendant, Harris Ice Machine Works, to report for duty. The collision occurred before Freytag had arrived at the high school building, which was some three or four blocks out of direct line from Freytag's residence to the plant of his employer and codefendant, Harris Ice Machine Works. For about 12 years before the accident Freytag was employed by the defendant, Harris Ice Machine Works, as an erecting engineer. He was paid by the hour, his hours of employment were usually from 8 a. m. to 4:30 p. m., although he was subject to an emergency call at any time. When so called, he would report at the plant of his employer and his compensation and service would begin at the time he so reported. At his option, he could use his automobile for transportation, and during the hours intervening from the time his compensation so began each day until it ceased for the day. If he used his automobile within the city of Portland for transportation, he was reimbursed in the amount that otherwise he would have spent for street-car fare in going from the plant of his employer to the place of work and in returning to said plant. If such use was made of his automobile outside of the city of Portland, he was paid mileage at the rate of five cents per mile. He was not allowed any pay or credit for using his automobile to ride from his home to the plant of his employer or to the place of his work, when an installation contract required several days or weeks, at which time he would report at the place of such installation instead of first going to the place of business of his employer. Neither was he allowed any compensation for using his automobile in returning to his home. At times, during his working hours, he had carried material in his automobile from the ice machine company's plant to places where it was needed for

which he was remunerated by the ice machine company. There is nothing in the testimony tending to show that he had any such material, or any property whatever, in his possession or in his automobile belonging to his employer when the collision in suit occurred.

Stating the case most favorably to plaintiff, Freytag was going to his work upon the public streets of Portland on a route of his own choosing in his own automobile; and, at a place remote from the premises of his employer, he encountered and collided with plaintiff and plaintiff's motorcycle.

We can find no principle of law upon which to predicate liability on the part of defendant, Harris Ice Machine Works, for damages caused by Freytag.

■ The principle invoked by plaintiff comprises a maxim of the common law. In English, it is expressed by the mandate ''Let the superior respond.'' It means that the principal or master should be answerable for the acts of his agent or servant. It is based on the principle that a duty rests upon every man, in the management of his own affairs, whether by himself or by his agents or servants, so to conduct them as not to injure another and that, if he fails in that duty and another is thereby injured, he shall answer for the damage: 21 R. C. L. 845.

■ Before this rule may be applied, it must be shown that the relationship of principal and agent or master and servant existed at the time the damage was done, and that the servant was acting in the course of his employment. The term, ''in the course of his employment'', as here used, means ''while engaged in the service of the master'', and is not synonymous with the phrase, ''during the period covered by his employment'': *Slater v. Advance Thresher Co.*, 97 Minn. 305 (107 N. W. 133, 136, 5 L. R. A. (N. S.) 598).

■ It is a general rule that an accident does not arise in the course of employment when it occurs while the employee is on his way to work and before he has reached the premises of the employer or the place where his work is to be done.

■ The exceptions to this rule are, where the employer furnishes transportation to the place of work or the employee travels over a way expressly or impliedly authorized or acquiesced in by the employer, or while the employee is traveling upon the premises of the employer, or is coming from a place maintained by the employer for the use of the employees as an incident of their employment; or where the employee is using an automobile or other vehicle furnished by the employer or bringing property or money or some report or other document or message connected with or pertaining to the employer's business; or when the master controls or has the right to control the conduct of the servant.

■ The case at bar does not come within any of the exceptions. Freytag was taking a course of his own choosing, had no property of his employer, was on no mission in the interest of his employer, was not in the pay of his employer, and was not subject to the orders of his employer until he arrived at the plant.

Perhaps the nearest approach of this case to any of the exceptions is due to the arrangement between the two defendants herein that Freytag would answer emergency calls at any time. It is not suggested that, at the time of the accident, he was answering any such call. It is said that he had been directed to report at the plant of his employer instead of returning to the place of extended installation of equipment at a brewery where he had been working for sometime immediately prior to the collision; and that, after so reporting, he would go to Astoria. We think that situation

does not take the case out of the general rule just announced.

■ The mere fact that an employee is on call does not render his employer liable: *El Paso & S. W. Company v. LaLonde,* 108 Tex. 67 (184 S. W. 498); *Perez v. Atchison T. & S. F. Ry. Co.,* 192 S. W. 274.

The two cases last cited were instituted to recover for damages sustained by employees, because of torts of employers, but the question under discussion is involved, namely, whether at the time of the torts the employees were in the service of the employers.

The case of *Wilson v. Steel Tank and Pipe Co. of Oregon* ante p. 386 (52 P. (2d) 1120), is cited by plaintiff. There, one Dierking, who was the vice president, shop superintendent and estimator, and who superintended the installation of sold equipment, had gone to Vancouver, where the defendant was installing and had installed a large amount of equipment in a brewery. Dierking went to see the brewery in operation. He was returning from this mission and had left the interstate bridge when his car collided with the one in which the plaintiff was riding. The distinction between that case and the one at bar is that Dierking was an officer of the defendant. Every act done by him in behalf of the company in furtherance of the interests thereof was a direct act of the corporation, while Freytag was employed only by the hour, worked under the direction of another employee, and his responsibility to his employer ended when his day's work was done. More than that the mission of Dierking had been partly performed. Whether it was terminated when he arrived at the place of his accident clearly was a question of fact for the jury. With Freytag, his employment for the day had not begun.

Other cases cited, in support of the contention that the doctrine of *respondeat superior* is applicable to the facts of this case, are: *Robertson v. Olson*, 181 Minn. 240 (232 N. W. 43), wherein the actual tortfeasor was returning unused material to his employer; *Elliason v. Western Coal & Coke Co.*, 162 Minn. 213 (202 N. W. 485), where the driver was returning with delivery slips and money; *Caver v. Eggerton*, 157 Miss. 88 (127 So. 727), where the hour of employment had arrived, the same being 7 or 8 a. m., and the collision occurred at 8:10 a. m., and the driver, a deliveryman, was on his way to the employer's store to take his first delivery; *Schmitt v. American Press et al.* (Mo. App.) 42 S. W. (2d) 969, wherein it was the duty of a servant on certain days to leave home earlier than usual and collect unsold papers before reporting to the master's place of business, and the accident happened while the servant was traveling from home to the place where the first bundle of unsold papers was to be picked up; *Silent Automatic Sales Corp. v. Stayton*, 45 F. (2d) 471, wherein the employee was driving a truck taking employees home by the consent and with the authority of employer and was transporting tools and material of employer at time of collision; *Western Union Telegraph Co. v. Dubell*, 69 F. (2d) 149, wherein employee, who was a messenger boy, had a delivery slip, which was to be returned to the telegraph office, and, at time of accident, was returning, after having delivered a message, and traveling in the direction both of his home and the telegraph office; *Kuehmichel v. Western Union Telegraph Co.*, 125 Minn. 74 (145 N. W. 788, L. R. A. 1918D, 355), wherein employee was acting during the period covered by his wages of employment; *Auer v. Sinclair Refining Co.*, 103 N. J. L. 372 (137 Atl. 555, 54 A. L. R. 623), where the employee was em-

ployed to devote his whole time to the sale of his employer's products, authorized to use his own automobile and paid by his employer weekly for the upkeep and running expenses of his car, the collision occurring within the employee's territory as he was driving from the point of his last call at the end of his day's work to the garage at his home where he kept his car; *Dayton Biscuit Co. v. Aerni,* 40 Ohio App. 49 (177 N. E. 775), where the employee was carrying samples and money of his employer; and *Brown v. Montgomery Ward & Co.,* 104 Cal. App. 679 (286 P. 474), where the employee, a traveling auditor, was paid a certain sum per week, was allowed to travel in his own automobile for which the company paid him nine cents a mile from the time he left his house to the first store, which was at Merced, thence to other specified towns and thence home, while his work had to be done within a given period as specified in a program of audits, otherwise the employee commenced work, continued work or stopped work at such time or times as he chose, worked or traveled on such hours as he chose and was not under any order or orders in any respect. At the time of the accident the employee had in his automobile a typewritten book of instructions and Salinas reports belonging to his employer. The distinction between the facts in each of these cases and the case at bar is obvious.

■ An insurance policy was offered in evidence by plaintiff. The court sustained defendant's objection thereto. The policy

"covers the legal liability of the named assured (and of the named assured only) for bodily injuries and property damage, as provided in the policy, arising out of accidents resulting from the use of any automobile and/or motorcycle, of the private passenger type, in the business of the named assured, except any

automobile or motorcycle which at the time of the accident is: 1. Owned in whole or in part by the named assured or by the individual partners thereof, if the named assured is a copartnership. 2. Hired or leased by the named assured. 3. Registered in the name of the named assured."

Defendant, Harris Ice Machine Works, was the "named assured".

By the terms of the policy the employees of the assured were divided into two classes as follows:

"Class 1. (a) All outside employees whether compensated on a salary and/or commission basis whose usual duties involve the use of automobiles or motorcycles, not herein excluded, in the business of the named assured, and

"(b) All other employees whether compensated on a salary and/or commission basis whose usual duties involve the use of automobiles or motorcycles, not herein excluded, in the business of the named assured who receive a specific operating allowance of any kind (operating allowance meaning rate per mile; gas, oil, tire or upkeep allowance; where the salary, commission or terms of employment contemplate the use of an automobile or motorcycle).

"Class 2. All other employees whether compensated on a salary and/or commission basis, not included in Class 1."

Inasmuch as the schedule attached to the policy contains no name of any employee and there is a warranty by the assured that such schedule contains the names of all persons described under class one, it is fair to assume that only employees under class two are covered by the policy. In any event, only injuries and damages are covered which arise out of accident resulting from the use of a motor vehicle in the business of the named assured.

The attorney for defendant, Harris Ice Machine Works, was furnished by the insurance company because the policy contains an agreement on the part of the insurance company to defend in the name and on behalf of the assured any suit alleging such bodily injuries or death or property damage to which the insurance therein provided is applicable.

There is nothing in the policy of insurance tending to show that the ice machine company had any control over or interest in Freytag's automobile at the time of the collision in suit. No error was committed in sustaining the objection to its introduction in evidence.

The other questions need not be discussed because we have taken the view of the facts most favorable to plaintiff based upon all of the testimony.

The judgment of the circuit court is affirmed.

RAND, BELT and ROSSMAN, JJ., concur.