Argued June 18; affirmed July 7; rehearing denied October 6, 1942

# LARKINS *v.* UTAH COPPER CO. ET AL.

(127 P. (2d) 354)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*James Arthur Powers*, of Portland, for Utah Copper Co., appellant.

*Bardi G. Skulason*, of Portland, for Florain Harlow, appellant.

*John F. Reilly* and *Walden Stout*, both of Portland (Reilly & Davidson and Walden Stout, all of Portland, on the brief), for respondent.

BELT, J. Plaintiff commenced this action to recover damages for personal injuries sustained by her as a result of being struck by an automobile owned and driven by defendant Florian Harlow, an employee of the defendant Utah Copper Company, a corporation.

A verdict was had against both defendants for $15,000 general damages and $563 special damages. From the judgment entered thereon the defendants appeal. Plaintiff died since the trial in the circuit court and, by reason thereof, Edward C. Larkins was appointed administrator of her estate and substituted as respondent herein.

■ The motions by defendant Utah Copper Company for nonsuit and directed verdict require a statement of the facts most favorable to the plaintiff. The motions were based upon the proposition that there is no evidence showing that, at the time of the accident, Harlow was acting as agent of the company within the scope of his authority. The plaintiff sought to hold the defendant company liable on the theory of respondeat superior. It is not contended here that there is no evidence tending to show negligence on the part of the defendant Harlow.

The Utah Copper Company was engaged in the business of buying lumber from mills in western Oregon and Washington on a large scale—500 to 700 cars each year. It maintained an office in the city of Portland, in charge of Mr. Chatterton, its purchasing agent. It was the duty of the defendant Harlow, as it was of six other employees working out of the city, to inspect lumber purchased by the company, as it was loaded on the cars for shipment. Harlow was subject to call at any time and, according to Mr. Chatterton, "could be sent any place we wanted to send him." Harlow and the other inspectors always used their own automobiles in going to and from the place of inspection. After the lumber was inspected and Harlow returned to his home it was his duty to contact the office—usually by telephone—and to make out a written report of inspection.

In the year 1940, Harlow worked 212 days inspecting lumber and was paid therefor the sum of $8 per day. Such rate of payment was made by the defendant regardless of the number of hours per day required to inspect the lumber. In addition to such payment, Harlow was allowed his hotel expenses and railroad fare from Portland to place of inspection and return. This fare was, with the knowledge and consent of the defendant, applied by Harlow to the maintenance and upkeep of his automobile.

About 4 o'clock in the morning of February 9, 1940, Harlow, pursuant to order of the defendant company, left his home at Milwaukie, a few miles south of the city of Portland, to go to Bucoda, Washington—eight miles north of Centralia—for the purpose of inspecting lumber. Harlow completed his inspection before noon of the same day and then drove to Hoquiam, about 60 miles distant, on a mission of his own. After transacting his business at Hoquiam, he started back to Centralia at about 4 o'clock in the afternoon and, upon arriving there, turned south on the Pacific highway, the direct route home. Harlow arrived at Portland at 7:30 at night—although it was 160 miles from Hoquiam —and proceeded slowly, as he says, south on Union avenue.

Although an arc light was burning at the intersection, Harlow said he first saw plaintiff when he entered the intersection and she was 20 or 25 feet away. It was a dark and stormy night. Harlow thus describes on direct examination how the accident occurred:

> "Well, when I got into the intersection of Halsey street I saw a woman on her hands and knees right square in front of me. I applied my brakes as quick as I possibly could and tried to swing the car, but the street was very wet and rainy and the car

slid—the tires—the brakes locked the wheels and the car slid practically straight on to the woman. And I got the car swerved enough so I just struck her either on the hip or the behind, and quite a sharp little blow. I felt the impact very plainly. And as the car entered the lane it stopped. I opened the door on the right hand side, the right hand door on the car, and got over and looked out, and the lady was laying just at my right wheel, about two feet from the car.''

Plaintiff was found in an unconscious condition. Her body was lying in a northwest direction, her head being about five or six feet north of the northern line of the pedestrian lane or crosswalk. Halsey street is 36 feet wide from curb to curb.

The vital question in the case is one of agency. Was defendant Harlow, at the time of the accident, driving the car in furtherance of his master's business? Was he acting within the scope of his employment? Or was he, as contended by the company, an independent contractor? The only witnesses testifying relative to this phase of the case were Harlow and Chatterton, called by the plaintiff, and their evidence is uncontradicted. Plaintiff, on account of her physical condition, was unable to testify.

It is the contention of the defendant company that the inspectors' day ''begins when they start to work at the mill and ends when they are through at the mill.'' The company asserts it was wholly immaterial to it whether Harlow went to the place of inspection by bus, train, or automobile, and that it never undertook to exercise any control over the route he took in going to or from his work. It is admitted, however, that the company had knowledge that automobiles were used exclusively by its employees for such work.

■■ It is not necessarily controlling upon the question of the employer's ultimate liability that the automobile was owned by the employee Harlow. Of course, if the automobile were owned by the employer, an inference of agency might, by reason thereof, be drawn. Where ownership is in the employee, no such inference arises from proof in itself of ownership and it is incumbent upon the plaintiff to show that the servant or employee was driving the car at the time of the accident with the actual or implied consent of his employer and in the furtherance of the latter's business: *Knapp v. Standard Oil Co.*, 156 Or. 564, 68 P. (2d) 1052; Blashfield's Cyc. Automobile Law, § 3078.

As said in 5 Am. Jur. 728:

"The mere fact that an employee uses his own automobile in the business of the employer does not make the latter liable under the doctrine of respondeat superior for injuries inflicted by such employee in the operation of the automobile. If, however, the other circumstances involved in the case are consistent with, or require, the inference that the activity in which the servant was engaged at the time of the tort complained of, and in which he was using his own car or one which he had hired, was within the scope of his employment, the person injured may recover from the employer, if the servant's use of the automobile or other vehicle was authorized, either expressly or impliedly."

Also see cases in note 112 A.L.R. 921.

■ The rule is thus stated in Huddy, Cyc. Automobile Law (9 Ed.; Vol. 7-8) § 138:

"A master or employer may be liable for the negligence of his servant or employee in the course of his employment, though the employee is using his own car. But in order to establish liability in such

a case, it must appear that the relation of master and servant existed between the parties, in the sense that the master had the right to control the servant's conduct, that the negligent act was committed within the course and scope of the servant's employment, and that the use of the automobile was expressly or impliedly authorized by the master. * * *'' (Citing numerous cases in support of the text, among which is *Knapp v. Standard Oil Co.*, supra.)

■■ In the instant case, a very reasonable inference may be drawn from the facts that the use of the automobile by Harlow in going to and from the place of inspection was impliedly authorized. Indeed, the automobile was the only practical and feasible method of transportation as the inspector was obliged to be present when the lumber was loaded on the cars for shipment. It is common knowledge that many sawmills are located in isolated sections of western Oregon and Washington. It is futile to talk about Harlow's carrying on his work of inspection by going to the place of work by train or bus. In view of the character of the work in which Harlow was engaged, it may well be said that the automobile was necessary to the efficient prosecution of the defendant company's business.

■ Harlow was not a free agent or an independent contractor. While the company—so far as the record discloses—never actually exercised any control over him in going to or from his work, it is reasonable to infer that it had the right to exercise such control if it saw fit to do so, and that is the controlling factor in determining whether the relationship of independent contractor or that of master and servant exists.

We think the company was benefited by having Harlow return home reasonably soon after having com-

pleted his inspection, in order to be available for other like work. This, undoubtedly, is the reason that, upon his return home, he was required to contact the company by telephone. Furthermore, Harlow was obliged to make reports of the inspections, which he ordinarily did upon his return home. It is also believed that the company, in fixing the compensation of Harlow, took into consideration the time required by him in going to and from the place of inspection. Even though the inspection required only two or three hours' work, Harlow was paid $8 per day.

■ The cases are legion involving employers' liability for the negligence of an employee in driving his own car. It is clear that no liability attaches unless, at the time of the accident, the employee was driving the car with the express or implied authority of his master and was acting within the scope of his employment. Obviously, the decision depends upon the particular facts and circumstances of each case. At times the question, as in the instant case, is a narrow one and there is a divergence of opinion in the courts upon similar factual situations. A great number of authorities from other jurisdictions have been cited. It would require many pages of the reports to review them all. The question of agency in similar cases has been considered many times by this court and we see no need of any extended restatement of the law.

■ We are in accord with the general rule that an accident does not arise in the course of employment when it occurs while the employee is going to or from his place of work. Respondeat superior does not apply unless, at the time of the accident, the employee was acting within the scope of his employment or, as otherwise stated, was engaged in the furtherance of his master's business. The instant case is to be dis-

tinguished from those merely involving the application of the general rule, in that Harlow was directed to go to Bucoda to transact business for his employer; that the use of the automobile was impliedly authorized; that such method of transportation was reasonably necessary for the efficient prosecution of the company's business; that Harlow, the employee, was subject to call at any time; and that it was his duty to return home and contact defendant company in order to be available for other inspection work.

*Knapp v. Standard Oil Co.*, supra, is squarely in point and is adverse to the contention of appellants. Hampton, an employee salesman of the Standard Oil Company, was ordered to go from his home at Burns, Oregon, to Pendleton, Oregon, to attend a meeting to promote the sale of motor oil. Hampton was driving his own car. He was paid a monthly wage. On his way home, an accident occurred. This court, speaking through Mr. Justice RAND, said:

> "* * * the evidence was sufficient to warrant the jury in finding, as it did, that the relationship of master and servant did exist at the time of the accident and that Hampton, in so returning to the place of his employment, was acting in the performance of a duty then owing by him to the defendant company under its implied authority."

Liability against the defendant company was sustained. We see no substantial distinction between this case and the one under consideration. In support of the contention of plaintiff that Harlow was acting within the scope of his employment, also see: *Wilson v. Steel Tank & Pipe Co.*, 152 Or. 386, 52 P. (2d) 1120; *Albrecht v. Safeway Stores*, 159 Or. 331, 80 P. (2d) 62.

*Borgstede v. Waldbauer*, 337 Mo. 1205, 88 S.W. (2d) 373, is particularly in point. In that case, Waldbauer was employed by the grocery company as a salesman and collector of accounts. In making sales and collections, he traveled by automobile. After making a call for the purpose of collecting an account, he had an accident on his way home. A pedestrian was struck while she was crossing the street intersection. The court, in sustaining judgment for the plaintiff, held that Waldbauer was, at the time of the accident, acting within the scope of his employment. The court said:

"It was just as necessary for Waldbauer to return as it was for him to go to north St. Louis, as he had no business of his own there, but went in the interest of his employer. He was, therefore, about his master's business."

Also, to the same effect, see the well-reasoned case of *Auer v. Sinclair Refining Company*, 103 N. J. L. 372, 137 A. 555, 54 A. L. R. 623.

*Hantke v. Harris Ice Machine Works*, 152 Or. 564, 54 P. (2d) 293, relied upon by appellants, is not contrary to the above conclusion that there is evidence tending to show that Harlow was acting within the scope of his authority at the time of the accident. In the Hantke case, Freytag, the employee of Harris Ice Machine Works, was driving his daughter and two other young ladies to a meeting at the Jefferson high school in the city of Portland. He was using his own car and intended to go from there to his place of employment. An accident occurred before Freytag reached the high school and at a time prior to his regular hours of employment. The court said:

"Freytag was taking a course of his own choosing, had no property of his employer, was on no mission in the interest of his employer, was not in

the pay of his employer, and was not subject to the orders of his employer until he arrived at the plant."

*Khoury v. Edison Electric Illuminating Co.*, 265 Mass. 236, 164 N. E. 77, 60 A. L. R. 1159, supports appellant's contention that the doctrine of respondeat superior does not apply to the facts in this case, but such authority expresses the minority view. The court, in *Webster v. Mountain States Telephone & Telegraph Co., et al.*, 108 Mont. 188, 89 P. (2d) 602, thus spoke of the Khoury case:

"The case of Khoury v. Edison Elec. I. Co., 265 Mass. 263, 164 N.E. 77, 60 A.L.R. 1159, and others following it, are also relied upon by defendant company. The Khoury case represents the minority view. It has been expressly repudiated in California (Cook v. Sanger, 110 Cal. App. 90, 293 P. 794) and in effect disapproved in Iowa (Heintz v. Iowa Packing Co., 222 Iowa 517, 268 N.W. 607), and Oregon (Wilson v. Steel Tank & Pipe Co., 152 Or. 386, 52 P. 2d 1120), * * * *.''

In reference to such case, the court, in *Rice v. Garl*, 2 Wash. (2d) 403, 98 P. (2d) 301, said:

"We are here concerned only with the question whether an employee was 'in the course of his employment.' While we do not, even now, regard the Khoury case as anything other than 'a well considered opinion', and although we concede that it is contrary to our present conclusion, we must, in a case involving a situation such as we have here, respectfully decline to follow it. Nor are we alone in the position we take in that regard. Other jurisdictions in later cases support our view, and a number of courts have of late referred to the Khoury case and similar cases as expressing the minority rule, and have declined to follow them."

 Appellant company in substance requested the court to declare, as a matter of law, that Harlow, at the time of the accident, was not its agent acting within the scope of his authority. We think the issue of agency was properly submitted to the jury. It does not necessarily follow that, because the evidence is undisputed, only one reasonable inference could be drawn therefrom. Where different reasonable inferences may be drawn from undisputed evidence, the question is for the jury.

█ It is argued that defendant company is not liable because Harlow deviated from the course of his employment by going to Hoquiam on a mission of his own. The accident, however, did not occur until after Harlow had resumed the work of his master. If the accident had occurred while he was between Hoquiam and Centralia, a different question would be presented. This departure or deviation was not of such character as to indicate an abandonment of his employer's work. Harlow did not go to Bucoda on a "frolic of his own." The trip to Hoquiam suspended the relationship of master and servant but such relationship was resumed when Harlow returned to Centralia and was on the direct route home: Blashfield, Cyc. of Automobile Law (Permanent Ed.) § 3051; 35 Am. Jur. p. 988. As said in Huddy, Cyc. Automobile Law (9 Ed.; Vol. 7-8), p. 253:

> "The fact that the servant would not have been at the place of the accident but for the deviation, is immaterial, except as it may tend to show a permanent or a temporary abandonment of his master's service."

Assignment of Error III pertains to the giving of certain instructions on the question of agency, it being the contention of appellants that the court should

have determined such issue as a matter of law. We think the question of agency, in view of the record, was for the consideration of the jury. The instruction was a correct statement of the law.

■ Assignment of Error IV improperly includes an instruction given to which no exception was taken. It is, therefore, not here for review.

■ Assignment of Error V is predicated upon the giving of the following instruction requested by plaintiff:

"I instruct you that a person driving an automobile is driving a machine capable of doing great damage if not handled in a careful and prudent manner. Therefore, it takes more care on the part of the driver of an automobile to amount to reasonable care in the situation than is required of a pedestrian walking across the highway. While the same degree of care is imposed on both the automobile driver and the pedestrian, the amount of care may be different, for it may be said the autoist is bound to exercise a greater amount of care than the pedestrian."

The above instruction is somewhat involved but we think what the court tried to impart to the jury was that the degree of care to be exercised by either a motorist or a pedestrian must be commensurate with the danger involved. The automobile, when not properly handled, is capable of doing great injury. As said in *Hinckley v. Marsh*, 124 Or. 1, 263 P. 886: "We have yet to hear of the first instance where an automobile has been seriously damaged by colliding with a pedestrian." There is no evidence tending to show contributory negligence on the part of the plaintiff. The instruction—even if erroneous—did not prejudice the rights of the defendants.

█ Assignment of Error VI concerns the giving of the following instruction:

"I further instruct you that it is the duty of the driver of a motor vehicle in approaching a pedestrian lane to observe whether pedestrians are crossing thereon and, if so, to give them an opportunity to pass in safety and, if necessary for their protection, to check the speed of his car or even to stop and wait until all danger of injuring any pedestrian is passed."

This instruction is in keeping with the law as announced in *Maneff v. Lamer*, 148 Or. 455, 36 P. (2d) 336. An additional instruction is set forth in the brief under this assignment—contrary to the rules of the court—but, since no exception was taken thereto, we pass the same without comment.

We find no reversible error in the record. It is a clear case of negligence on the part of the defendant Harlow and it is believed there is substantial evidence tending to show that, at the time of the accident, he was acting within the scope of his authority as an agent of the defendant company.

Judgment is affirmed.