W. E. SIEVERS, Administrator of the Estate of Charlotte Sievers, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 44–59.

United States District Court
D. Oregon.
May 24, 1961.

Lytle, Schroeder & Denning, Robert D. Lytle, Vale, Or., for plaintiff.

C. E. Luckey, U. S. Atty., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for defendant.

KILKENNY, District Judge.

Decedent Charlotte Sievers was killed in an automobile accident occurring on a public highway in Malheur County, Oregon, on the 21st day of January, 1958. Her administrator prosecutes this action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 and 2674. It is charged that the death of the decedent was caused by the negligence of one Edward A. Snow. Snow was an Airman 3rd Class in the service of the United States Air Force. He was proceeding on travel orders from Geiger Field, Spokane, Washington, to McGuire AFB, New Jersey. Snow was released from assignment at Geiger Field in Spokane on January 31, 1958. Snow was accompanied by Airman Carter and they intended to stop at Carter's home in Greenwood, Indiana, from which point Snow intended to proceed to the home of his fiancee in Marysville, Tennessee. His orders required him to report to McGuire between the hours of 7:00 a. m. and 11:00 a. m. on March 1st and permitted him eleven days' travel time. The change of station was permanent. These orders authorized travel by private automobile and reimbursement for travel expense to the extent provided by the regulations. During his leave and travel time he was to receive his airman's pay. It was Snow's privilege to elect to utilize his own private automobile in carrying out orders on his change of station and to be reimbursed at the mileage rate based on the official distance between stations. Snow could have traveled by any other method of transportation he elected. In other words, he was free to perform the

entire travel in compliance with the orders in any way he deemed advantageous to himself.

The most direct highway route between Spokane and the East Coast was impeded by snow and other winter weather conditions. The route being followed by Snow was a well recognized alternate route. Enroute the vehicle driven by Snow collided with the vehicle in which decedent was riding, causing decedent's death.

That Snow was negligent at the time and place in question is obvious. At the time he was operating his vehicle in the nighttime without headlights on the wrong side of the highway without keeping a lookout and failed to have his vehicle under control. Such acts of negligence proximately caused the collision and resulting death of Charlotte Sievers.

■ The only remaining issue is whether Snow was acting in the scope of his employment at the time the accident occurred. Since a federal statute is involved and since the dictates of that statute [1] would seem to be limited to state law involving the "negligent or wrongful act or omission," rather than the status, of the employee, it would seem that federal law, rather than state law, should be used in finding a solution to the problem. However, the per curiam opinion in Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, forecloses an inquiry into this field. A person in the military service of the United States occupies a status which is peculiar to that field. The one sentence opinion in Williams was in error in stating that the California law applied. No doubt, the court intended to say that such law should be used in deciding the law of Guam. Guam is a territory and its Organic Law was enacted by the Congress of the United States. So, in fact, the court was passing on the local law of Guam. Harris v. Boreham, 3 Cir., 1956, 233 F.2d 110; Mafnas v. Government of Guam, 9 Cir., 1955, 228 F.2d 283.

■ No case has been cited, and I can find none, where the courts of the state of Oregon or of any other state have attempted to pass on the precise point. Of course, this is understandable. Due to the peculiar status of the serviceman, it is not likely that such a question will ever be presented to a state court. Notwithstanding this fact, it is my duty to anticipate what the Supreme Court of Oregon would hold under like circumstances and conditions and declare the law for the court on such subject.

The Federal Tort Claims Act permits a recovery against the United States for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C.A. § 1346(b).

One of the most recent cases on this controversial subject is Cooner v. United States, 4 Cir., 1960, 276 F.2d 220, in which Chief Judge Sobeloff analyzed the New York decisions involving the doctrine of respondeat superior. He arrived at the conclusion that the law of the state of New York, the state in which the accident occurred, permits a recovery on a state of facts similar to that in question. Judge Sobeloff points out that the test in the state of New York is not, as it is in other jurisdictions, one which requires the particular activity at the time of the accident, i. e., the driving, to be the normal duty of the servant, but is rather whether the master's business is then being substantially furthered. After a thorough review of the New York cases the court held that the "dual purpose" rule, i. e., where the business interests of the employer and the personal interests of the employee are both furthered, was the rule followed by the courts of the state of New York and that

1. 28 U.S.C. § 1346(b).

the Government would be liable. This rule is not followed in Oregon. Crosby v. Braley & Graham, Inc., 171 Or. 72, 134 P.2d 110.

Judge Sobeloff's opinion in Cooner holding the Government liable is weakened by the very able dissenting opinion of Judge Haynesworth challenging the rationale of the use of the dual purpose doctrine under such a factual situation and in failing to use the "right of control" doctrine as taught by other New York cases. [276 F.2d 235.]

Both the majority and dissenting opinions in Cooner cite Chapin v. United States, 9 Cir., 1958, 258 F.2d 465, holding that under a similar state of facts no recovery can be made against the Government. The majority opinion in Cooner would distinguish Chapin on the ground that California law is different from New York law. The dissenting opinion urges that the reasoning in Chapin should be applicable to Cooner.

The common law doctrine of respondeat superior is part of the statutory law of the state of California and was viewed as such by Judge Barnes in analyzing the California decisions in Chapin. The common law of England as it existed at the time of the American Revolution, so far as it was general and not local in nature, was adopted as part of the Organic Law of the state of Oregon when the state was admitted to the Union. United States F. & G. Co. v. Bramwell, 108 Or. 261, 217 P. 332, 32 A.L.R. 829; Fidelity & Deposit Co. of Maryland v. State Bank of Portland, 117 Or. 1, 242 P. 823; State v. Black, 193 Or. 295, 236 P.2d 326. I would venture the view that the special statute adopting the common law in California was made necessary by reason of the early influence of the Spanish law in that state. I mention the fact that the common law is applicable, both in California and Oregon, so that I may turn to the California decisions in the event I am unable to find an applicable authority in Oregon.

My research reveals no Oregon case exactly in point. As a general rule, the employer is not liable for the acts of an employee unless it can be shown that the relationship of master and servant existed *at the time* the damage was done and that the employee was *then* acting within the *course of his employment*. Fogelsong v. Jarman, 168 Or. 177, 121 P.2d 924; Hantke v. Harris Ice Machine Works, 152 Or. 564, 54 P.2d 293. Where the employment is admitted, such as here, the primary test to determine the master's liability for the act of his servant is whether the act was within the scope of his employment. Barry v. Oregon Trunk Railway, 197 Or. 246, 256, 253 P.2d 260. Even though the employee is on a regular monthly salary, the employer is not liable unless the employee was acting within the scope of such employment at the time of the accident. Bunch v. Standard Oil Company, 144 Or. 1, 23 P.2d 328. "Scope of employment" is not to be confused with "period of employment." The period of employment is of no significance. Hantke v. Harris Ice Machine Works, supra.

Plaintiff relies mainly on two Oregon cases, Knapp v. Standard Oil Co., 156 Or. 564, 68 P.2d 1052, and Larkins v. Utah Copper Co., 169 Or. 499, 127 P.2d 354. The writer is quite familiar with the Knapp case, having tried the case in the lower court and argued it in the appellate court. I believe both cases are distinguishable.

In Knapp a salesman for the defendant company, residing in Burns, Oregon, was directed to attend a sales meeting at Pendleton. Normally, he used a company car while engaged in the business of his employer, but on this occasion he and his wife proceeded to the meeting in the family vehicle. After arriving in Pendleton he drove on to Walla Walla, Washington, to visit with his wife's family and then returned to Pendleton to attend the meeting. After the meeting the employee was directed to drive to John Day to conduct business on behalf of the defendant the following day. John Day is located on the direct highway route to Burns. At the time of the accident he was transporting certain property of the

company consisting of advertising pamphlets and other literature. Defendant urged that since the employee and not defendant owned the automobile with which the injury was inflicted and that the employee was operating it on time free from any immediate or actual control, that no liability existed. In rejecting this contention the court held that it was the potential, rather than actual, control which would fix the master's liability and that the question of whether the employee, under the circumstances, was acting within the scope of his employment, was one for the jury. The court did not hold, as a matter of law, that the employee was so acting. This case did not involve a permanent change of employment nor was it a "transfer" case as mentioned by Judge Barnes in Chapin. Furthermore, the employee was performing a function, i. e., driving an automobile, which was within his regular duties in acting as a salesman for the defendant company. Of course, the serviceman Snow had no use for a motor vehicle or automobile in performing his usual and customary services for the Government.

In Larkins v. Utah Copper Co., supra, the corporate defendant was engaged in the business of purchasing lumber from different mills in western Oregon. It was the duty of the employee involved in the accident to inspect lumber purchased by the company as it was loaded on cars. In performing these duties he used his own automobile, for which he was paid $8 per day, plus railroad fare from Portland to the place of inspection and return. This method of transportation was used with the full knowledge of defendant. On the date of the accident the employee was directed to inspect lumber at a certain town in Washington. He proceeded on to another city in that state on a private affair but returned to the regular route and had arrived back in Portland at the time the accident occurred. In that case, as in Knapp, the employee was returning from a specific task which had been assigned to him by his employer and the employer derived a direct benefit from the activities in which the employee was engaged. Furthermore, the employee was performing the *exact service for which* he was employed. He was employed to make these inspection trips with an automobile and the fact that he was using his own automobile was held immaterial. Again, I mention that the serviceman's duties in his regular employment did not require or indicate in any way the use of an automobile.

■■ Both Knapp and Larkins point to the doctrine of potential control of the employee in arriving at the conclusion that the issue of fact should be submitted to the jury. I cannot but find that Snow was on leave status at the time he left Spokane. The Air Force was not interested in his activities from that moment until March 1st. He had twenty-eight days in which he could conduct himself as he pleased, the only requirement being that he report at McGuire Field on March 1st between the indicated hours. Had he so desired, he could have elected to drive to Canada on the north, Seattle, Tacoma, Portland or other cities to the west, or San Francisco, Los Angeles, Las Vegas, or other cities to the south. The twenty-eight day period would permit a grand tour of the United States with sufficient additional time to permit casual visits to Canada and Mexico. If this accident had happened on the highway between Spokane and Seattle, no one could contend that defendant was liable under any common law doctrine. Snow was free to proceed to any destination of his own selection. His mode of travel, route and method of operation were left entirely to his own discretion. He was not engaged in duties which, as a servant, he owed his master. He was not "hired" to drive a vehicle between duty stations. The mere fact that he was driving in the direction of McGuire Field should not, in my opinion, color the fact that he was under no obligation to travel in that direction at the time in question. The fact that the employee may be serving the master's business is not sufficient to charge the

master with liability for the employee's negligence. Crosby v. Braley & Graham, Inc., supra. In that case the employee was a salesman hired on a commission basis to sell used cars for the defendant. One of his duties involved locking each of the cars on the lot before leaving for home. He used his own automobile traveling between home and work and occasionally in looking up prospects, but received no allowance for mileage, gas or oil. On the occasion in question the salesman closed the lot and proceeded to drive one of his friends to his home. "On the return trip he recalled that he had failed to lock a certain Ford automobile on the lot. In driving back to the lot the accident occurred. In passing on the question the Supreme Court of Oregon said, "The law seems to be quite well settled that until the servant arrives at the place where his duty is to be performed the relationship of master and servant is suspended and not in effect." [171 Or. 72, 134 P.2d 113.]

The decision in Hantke v. Harris Ice Machine Works, supra, supports the conclusion that Snow was not acting within the scope of his employment. Wilson v. Steel Tank & Pipe Co., 152 Or. 386, 52 P.2d 1120, involved a case where the driver of the vehicle was an officer of the defendant company and was in the performance of his duties at the time the accident occurred. The decision is of no significance here. Cases such as Tyler v. Moore, 111 Or. 499, 226 P. 443, and Dalrymple v. Covey Motor Co., 66 Or. 533, 135 P. 91, 48 L.R.A.,N.S., 424, must be distinguished on the ground that the employee was operating a vehicle owned by the employer. Potential control seems to be a deciding factor in all Oregon cases where the vehicle involved was that of the employee rather than the employer.

Although the decision of this circuit in Pacific Telephone & Telegraph Company v. White, 1939, 104 F.2d 923, states that Oregon follows the rule which would impose liability if the service of the servant was in furtherance of the master's business, irrespective of whether it was done in exact observance of detail, the decision in that case must be read in light of the facts before it. In White the servant was attempting to perform the very service for which he was hired. The later Oregon case of Crosby v. Braley & Graham, Inc., supra, repudiates the doctrine that furtherance of the master's business is, in itself, sufficient.

I agree with Chapin that "special errand" cases such as Hantke and "continual travel" cases such as Knapp and Larkins are not helpful. I am convinced, as was Judge Barnes in Chapin, that the factual background in a case such as this is much closer to a "transfer" case such as was involved in McVicar v. Union Oil Co., 138 Cal.App.2d 370, 292 P.2d 48. In this type of case the employee is permanently transferred by his employer from one station to another. He at all times remains an employee of the employer and is carried as such on the payroll. However, during the "transfer" period he is acting on his own. In the present case, Snow had fully performed all duties required of him at Spokane and had no duties to perform for the Air Force until March 31st.

A "transfer" case presenting this question has not been decided by the Oregon court. As previously indicated, Oregon is a common law state. The California court, in its interpretation of the common law, has relieved the employer of liability of such a case. McVicar v. Union Oil Co., supra, I hold that the Oregon court would construe the common law in the same manner as the California Court. This being the law in Oregon, as I find it, Chapin v. United States, supra, is controlling. The act of travel being performed by Snow at the time of the accident was not such an act as was subject to the control of the Air Force as part of the duties which the employee was hired to perform. The special travel orders and the Joint Travel Regulations mentioned in Chapin are also before me in this case. I follow Chapin in holding that they are of little, if any, value in arriving at a proper conclusion.

I find in favor of the defendant and against the plaintiff on this issue of law and fact. This opinion shall stand as my findings. An appropriate judgment shall be entered in favor of the defendant.